321-0147, Equal to the State of Illinois, acted by Justin Nicolosi v. Daniel Moore, is mailed by Sean Conlon. Alright, good morning, Counsel. Mr. Powny, are you ready to begin your argument? I am. Thank you. Good afternoon, Your Honors. May it please the Court, Counsel. My name is Sean Connolly. I'm with the Office of the State Appellate Defender, and I represent Petitioner Daniel Moore. Mr. Moore is serving three concurrent sentences, two 35-year sentences for armed robbery, which include the 15-year firearm enhancement, and a 14-year sentence for burglary. Before his trial, he was offered a 20-year plea deal, which he turned down after being told by his attorney that the 15-year add-on either did not or might not apply to him. And I note that the post-conviction court did not make a finding of fact as to which version of that advice was actually given. After a third stage evidentiary hearing, the post-conviction court denied Mr. Moore's post-conviction petition, which had alleged that this advice constituted ineffective assistance of counsel. The court found that Mr. Moore failed to meet his burden because the question of the viability of the firearm enhancement was subject to an evolving conflict in the law in the time leading up to the trial, and because Mr. Moore rejected the plea despite being aware of that conflict. The issue on appeal is whether Mr. Moore has made a substantial showing by the preponderance of the evidence of ineffective assistance of plea counsel. In terms of the performance prong, respectfully, this premise that the legal status of the firearm enhancement was evolving at the relevant time is objectively and manifestly incorrect. The idea that Public Act 95-688 failed to revive the add-ons that had been struck by the Haas child court did not emerge until about two months after Moore's trial in this court's Rule 23 order in People v. Blair, and no published case endorsed the theory until the summer after the trial. Prior to that, references in the cases to the Public Act noted the statutory change as a historical matter, while references to Haas child were about the issue of whether Illinois should keep the identical elements test of the proportionate penalties clause or what the remedy of a proportionate penalties violation should be, but neither of those sets of those cases addressed the reenactment of the firearm enhancement. Consequently, at the time of plea counsel's advice, there was no legal support for this failed revival theory. In fact, the record suggests that the advice actually stemmed from a misunderstanding of both the Haas child and the earlier Garcia cases. The evidence for this is that plea counsel testified that he based his pretrial advice on decisions that came out after the trial and so could not have been, in fact, the basis for that advice, while Moore remembered the advice as having been based on Haas child and Garcia. But as the Supreme Court pointed out when overturning Blair, Haas child itself held that an amendment to one statute in a proportionate penalties comparison can revive the offense in the other statute subject to that comparison. Regardless of what the advice was actually based on, counsel certainly did not explain to Mr. Moore that the failed revival theory was untested and contrary to existing law. So even if counsel had had a cogent argument, which there's no evidence that he did, that argument was meritless at the time that the advice was given, a material fact that he never told Mr. Moore. Therefore, the advice was professionally deficient both because it was unfounded at the time it was given and also because counsel did not inform Mr. Moore that it was unfounded and untested. In terms of the prejudice prong, the only element the state is contesting is whether Mr. Moore has made a reasonable showing by the preponderance of the evidence that he would have accepted the plea absent counsel's advice. The evidence shows that Moore made his decision to go to trial based on a sophisticated cost-benefit analysis that took into account the relative values of his defense and the 20-year deal as compared to the possible sentencing ranges that he was presented with, which were 60 to 30 and 21 to 45. Both counsel and Mr. Moore understood that the value of the 20-year deal was not particularly high if the firearm enhancement did not apply and was particularly high if it did. This is because the sentencing discount that Mr. Moore would have gotten on the lower range only amounted to five years of actual time served off the maximum, while the deal was actually lower than the minimum of the higher range. Similarly, Mr. Moore understood that the value of his defense was relatively high compared to the discount on that lower range, but despite admitting liking that defense, was conversely low and not worth pursuing if he was pleading out to less than the minimum sentence. Furthermore, regardless of what version of the advice one credits, counsel presented Mr. Moore case law that he said supported the lower range. The lower range was thus presented as being on better legal footing than the higher range. So the factors Mr. Moore was facing were these. He had a plea deal that was either weak or strong. He had a defense that was worth pursuing if the plea deal was weak, but not worth pursuing if the plea deal was strong, and he was told by counsel that multiple cases supported the proposition that the plea deal was weak. So he accepted the risk and he went to trial. That decision was rational and reasonable considering the information he had at the time. Unfortunately, that information was wrong. The benefit of understanding Mr. Moore's thought process is that we know his decision making would have changed in specific ways with different inputs. If he had known to a reasonable degree of certainty that the minimum sentence was greater than the plea he was being offered, the risk would not have been worth it and he would have taken the plea regardless of that defense. At the very least, his petition and the evidence supporting his claim made a reasonable showing by the preponderance of the evidence that lower civil burden of proof that he would have taken the plea. He has therefore made a substantial showing of ineffective assistance of counsel. If there are no questions, we would respectfully request that this honorable court vacate the post-conviction court's order denying Mr. Moore's post-conviction petition and remand with instructions for the state to reoffer the 20-year deal. Counsel, with regards to the prejudice fraud... Yes, Your Honor. Didn't Mr. Moore say that he thought he went to trial not just because of the advice that he got with regards to the likelihood of it being overturned on appeal, but he thought he had a good case. He thought he had a good defense. And also, he admits that he was told by his attorney that the state was of the opposite opinion with regards to the enhancement. So, how does that meet the prejudice problem? So, on the first part of your question, Your Honor, Mr. Moore admits that he liked this defense. And his attorney believed that this was a viable defense. But again, we are privy to Mr. Moore's thought process in approaching the plea deal. And despite liking this defense, he understood what a good deal he was getting if that firearm enhancement did not apply. Or, I'm sorry, did apply. And so the value of that defense goes down as the value of the plea goes up. And so it's not just, or rather, let me say it this way. The fact that he liked the deal does not establish that he wouldn't have taken the, I'm sorry, that he liked the defense does not establish that he would not have taken the deal if he had understood the reality of the situation. Now, in terms of the second part of your question, Your Honor, yes, he was presented with these two ranges. But he was presented with case law that his attorney has told him supports the notion that these enhancements don't apply. And at the time that that advice was given, that was not true. Additionally, it's, the problem here is that he has two options. There are two potential outcomes. And they're being presented, one as being more likely than the other. Because again, counsel is saying that there's case law that supports the one over the other. In reality, there is no case law that supports that one. If we want to put numbers on it, you could say he was presented with a choice that was 50-50 or a 60-40 in favor of the enhancements not applying, when in fact it was 98-2 in favor of those enhancements actually applying to him. And so the fact that he understood that the state had a different idea of what the range was compared to his counsel, again, that's also not determinative because the state was correct. And the state was correct under the law at the time that the advice was given. If there are too many questions, I'll just stand before you. No. All right. I don't have any questions. Thank you, Your Honor. Thanks. Thank you. Mr. Nicolosi. Good afternoon, Your Honors. I feel like we all just did this a couple hours ago together. May it please the Court, Mr. Connolly, the state submits that the trial court properly denied defendants a post-conviction petition after the evidentiary hearing. The trial court found in denying that petition that the law regarding whether the enhancement applied was in fact in flux during the pendency of the defendant's pre-trial negotiations and plea discussions with the state. The state submits that the law in existence at the time of those negotiations did provide defense counsel reason to believe that this law was in flux. And as I cited in my brief, there were a few cases and a couple of potential PLAs taken by the Supreme Court that gave counsel indication that there was a chance that the public act did not revive the firearm enhancement. One such case was People v. Johns, which, again, all these cases occurred after the enactment of Public Act 95-688. People v. Johns, People v. Coleman, People v. Blanton, I discussed these cases in some depth in my brief. All of those referred to House Child and or 95-688. All of them found that the enhancements that were, the firearm enhancements that were added in those cases to be vacated as those courts all found that House Child controlled the matter. Coleman and Blanton even went as far as describing Public Act 95-688 as an attempt to revive the firearm add-on that was vacated in House Child. The state submits again that there were also two cases taken by the Supreme Court that dealt with whether or not House Child was still good law on this point. Those were People v. Clemens and People v. Kelley. Again, this is five cases that defense counsel had with which to form his opinion that 95-688 may not have revived the firearm add-on. And his references to, I think, Gillespie and Williams and Blair, those were after the fact? Yeah, I acknowledge in my brief that I conceded that it appears counsel is a little bit confused in the timeline. And wouldn't you say that the fact that those cases weren't even in existence at the time he actually advised his client, the operative time we're concerned with here, what you had was House Child and the legislation. So it would be more likely the defendant testified as to what counsel told him. Counsel testified as to what counsel told him. And because you had House Child basically in the legislation, it would be more likely for an attorney to say, you got these two things out there. Here it is. House Child says one thing, but now the legislature is trying to change that. If Gillespie, Williams, and Blair had existed, it would be more likely that he would say, I don't think the revival statute worked. I think House Child is still going to be good law. Had they been in existence yet, but they weren't. Really, all he had to advise his client with any certainty was House Child and the legislation. Am I off on my timeline? Yeah, I don't think you're off, Justice Peterson. I just think that the existence of the cases that I just discussed and the potential PLAs were likely to have added into counsel's calculus as to how he advised his client. And the state submits that there was, again, even though counsel did not reference those cases in his presentation on the post-trial motion, the state submits that the fact of the matter is that the law was in flux based on these cases that, obviously, Johns, Coleman, Blanton, these cases did not believe that 95-688 revived the enhancement. So the state submits that the trial court's decision that counsel did not provide sufficient performance in this case was not erroneous as there was sufficient support for counsel's advice that he gave to the defendant that there were two potential ranges for his offenses and that he was not sure at that point which one would control. Regarding if this court finds that counsel did not provide effective assistance, the state submits that the defendant could not show prejudice in this case. As I stated in my brief and the defendant stated, he, on September 16, 2011, he stated that he didn't want any pre-trial. He just wanted to go straight to trial. He clearly, this does not sound to the state like a man who wanted to plead guilty. Or, I'm sorry, that it sounded like someone who thought he would be convicted of these crimes. As the defendant stated in his testimony and counsel also added during his testimony on the evidentiary hearing, they both thought they had a good case. There was no independent eyewitnesses. All there were were co-defendants who counsel testified that the defendant told him that he did not believe those gentlemen would testify against him. There was no physical evidence at the scene. The state submits that evidence coupled with the fact that the defendant's own statement on the record that he wanted to go to trial supports the fact that even had the defendant been clearly informed about what the sentencing range was going to be, he was not going to accept a plea deal in this case. I guess that's all I have. Again, the state submits that the law here was in flux and that supports counsel's decision to advise the defendant that there were two potential ranges. The post-conviction court in this case did not err in finding that the law was sufficiently in flux at the time. And so the state would ask this court to affirm the denial of the defendant's post-conviction petition. Do you have any questions, Justice Albert? No. Do you have any more questions? No. Okay, thank you. Thank you. Mr. Connelly, your last statement. Thank you, Your Honors. I would like to just go through these cases that counsel is referring to. People beat Johns. The issue was whether—the issue was the question of remedy. The state in Johns admitted that House Child applied and was just challenging. What the remedy for such a violation would be or should be, it did not involve firearm enhancements. People beat Coleman. That case noted that the statute had changed and that House Child was still good law with regard to the identical elements. Again, we're not dealing with the firearm enhancements. People beat Blanton. It again noted that the statute had changed and it rejected the state's argument that House Child was incorrectly decided with regard to the identical elements test. Again, we're not dealing with the firearm enhancements. People beat Kelly. That was taken on the issues of whether House Child applied retroactively, whether it was correctly decided, and what the remedy should be. That appeal was dropped by the Supreme Court in light of Clemens, which, according to their order, disposed of the constitutional question in Kelly. Again, we're not dealing with the firearm enhancements. The law was not in flux at the time. There was no split of authority there. There was no conflict at the time. And this language that the state is honing in on, an attempt. Again, these cases are mentioning as a historical fact that the statute has changed. This is a standard convention that our courts use to signal to readers of these decisions that the discussion that they are reading does not apply to the current version of the statute. As we point out in the briefs, it's questionable whether this even counts as dicta. It certainly is not any sort of holding or finding on the viability of the public act. With regard to prejudice and this statement that Mr. Moore made in September that he would like to go straight to trial, the state's own questioning during the evidentiary hearing established that the 20-year deal was offered in June. That statement was made after counsel had presented the cases that he said meant that the firearm enhancements did not apply, after that very sophisticated cost-benefit analysis, and after the decision to go to trial had been made. That statement is not relevant to the question of prejudice today. With that, I would open myself to questions. I don't have any just to solve it. Thank you, your honors. All right. Thank you, gentlemen. All right. The court will stand in recess and take the matter of an issue and decision in due course. Thank you.